## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| | ) | |
| LAMONT WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  14-272 (RBW) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

## MEMORANDUM OPINION

Lamont Wright, the <u>pro</u> <u>se</u> plaintiff in this civil matter, alleges that the defendants, the

United States Department of Justice ("DOJ") and its Office of Information and Policy ("OIP"),

violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012), by failing to respond

adequately to his FOIA document request.  Complaint ("Compl.") ¶ 9.  Specifically, the plaintiff

requested "the Title III authorization memorandums and all other documents from the DOJ

involved in the authorization/approval for the electronic surveillance and interception of [the]

plaintiff'[s] private telephone conversations . . . ."  <u>Id.</u> ¶ 3.  The defendants have moved for

summary judgment, asserting that they "have processed [the plaintiff's] FOIA request and

determined that all of the records requested are exempt from disclosure under the FOIA."

[Defendants'] Motion for Summary Judgment ("Defs.' Mot.") at 1.  After carefully considering

the Complaint, the defendants' Motion for Summary Judgment, and the memoranda of law

submitted in support of and opposition to the motion,[1] the Court concludes for the following

reasons that it must grant the defendants' motion.[2]

# I. BACKGROUND

The plaintiff alleges that he submitted a FOIA request to the DOJ on August 31, 2013, for

"the Title III authorization memorandums and all other documents from the DOJ involved in the

authorization/approval for the electronic surveillance and interception of the plaintiff'[s] private

telephone conversations . . . ."  Compl. ¶ 3.  The defendants assert that they responded to the

request in a letter dated November 18, 2013, explaining that "to the extent that any responsive

records existed, they [are] . . . exempted from disclosure by statute."  Defs.' Facts ¶ 2 (internal

quotation marks omitted); see also Sprung Decl. ¶ 7.  The plaintiff appealed this response to the

OIP by letter dated November 26, 2013, Compl. ¶ 4; Defs.' Facts ¶ 4, and subsequently filed this

FOIA action on February 18, 2014, Defs.' Facts ¶ 5.[3]

Following the commencement of this action, the Criminal Division of the DOJ conducted

a search for the requested records and processed them under the FOIA.  Id. ¶ 8.  The defendants

---

[1] In reaching its decision, the Court considered the following submissions:  (1) the Complaint ("Compl."); (2) the defendants' Motion for Summary Judgment ("Defs.' Mot."); (3) the defendants' Statement of Material Facts Not in Dispute ("Defs.' Facts"); (4) the defendants' Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem."); (5) the Declaration of Peter C. Sprung ("Sprung Decl."); (6) the Plaintiff's Motion in Opposition to Defendants' [] Motion for Summary Judgment [] and Motion for Leave [] to Amend Original Complaint ("Pl.'s Opp'n"); and (7) the Defendants' Reply in Support of Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Leave to Amend Original Complaint ("Defs.' Reply").

[2] The Court notes that the plaintiff's opposition contains a request "for leave to file an amended complaint," alleging new claims under the FOIA.  But "[i]t is a well-established principle of law in this Circuit that a plaintiff may not amend [his] complaint by making new allegations in [an] opposition brief."  Budik v. Ashley, 36 F. Supp. 3d 132, 144 (D.D.C. 2014) (citing Larson v. Northrop Corp., 21 F.3d 1164, 1173–74 (D.C. Cir. 1994)); see also Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) ("it is axiomatic that a complaint may not be amended by the briefs in opposition").  This is true even in circumstances where the plaintiff is proceeding pro se.  See Manna v. U.S. Dep't of Justice, __ F. Supp. 3d __, __, 2015 WL 2264866, at *3 (concluding that a pro se plaintiff "cannot expand the scope of [the] litigation" through an opposition brief).  Thus, the plaintiff's "supplemental allegations are not properly before the Court" and may not be considered in deciding the current motion.  See Arbitraje Casa de Cambio, 297 F. Supp. 2d at 170.

[3] The OIP advised the plaintiff by letter on March 12, 2014, "that it was closing his appeal because he had filed the instant lawsuit."  Def.'s Facts ¶ 6; see also Compl. ¶¶ 10–13.

assert that "[t]he Criminal Division conducted the search in good faith . . . and every effort has been made to segregate nonexempt records from records that are exempt from disclosure." <u>Id.</u> ¶ 9; <u>see also</u> Sprung Decl. ¶¶ 20, 41. The defendants have now moved for summary judgment, asserting that all responsive records are exempt from disclosure pursuant to FOIA Exemptions (b)(3), (b)(5), (b)(6), and (b)(7)(C).[4] Defs.' Facts ¶ 10.

## II. STANDARD OF REVIEW

Courts will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In resolving a motion for summary judgment, all reasonable inferences that may be gleaned from the facts before the court must be construed in favor of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), and may do so by "citing to particular parts of materials in the record, including . . . affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits affidavits, declarations, or documentary evidence to the contrary. <u>Neal v. Kelly</u>, 963 F.2d 453, 456 (D.C. Cir. 1992).

Courts review an agency's response to a FOIA request <u>de novo</u>, 5 U.S.C. § 552(a)(4)(B) (2012), and "FOIA cases typically and appropriately are decided on motions for summary judgment," <u>ViroPharma Inc. v. HHS</u>, 839 F. Supp. 2d 184, 189 (D.D.C. 2012) (citations omitted). In a FOIA action to compel production of agency records, the agency "is entitled to

---

[4] The plaintiff also sought these records under the Privacy Act, 5 U.S.C. § 522a. Pl.'s Opp'n at 10. The Court need not consider the applicability of the Privacy Act's exemptions as an agency may not rely exclusively "on any exemption in [the Privacy Act] to withhold from an individual any record which is otherwise accessible to such individuals under the provisions of [the FOIA]." 5 U.S.C. § 552a(t)(2).

summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'"  Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978)).  And "even if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)" to comply with its requirements of the FOIA.  Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1167 (D.C. Cir. 2011) (internal quotation marks and citation omitted).

Summary judgment in a FOIA case may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and nonconclusory." Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotations and citations omitted). The affidavits or declarations should "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [] not [be] controverted by either contrary evidence in the record [or] by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." Span v. U.S. Dep't of Justice, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989)).

## III.  ANALYSIS

To prevail on its motion for summary judgment, the defendant in a FOIA case "must show beyond material doubt that it has conducted a search reasonably calculated to uncover all

relevant documents," Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation marks omitted), and that the responsive records "[have] been produced . . . or [are] wholly exempt from" disclosure, Students Against Genocide, 257 F.3d at 833.  For the reasons that follow, the Court finds that: (1) the defendants conducted reasonable and adequate searches, where necessary; (2) the defendants withheld from disclosure only documents for which FOIA exemptions properly apply; and (3) the defendants satisfied their obligations under the FOIA to review the responsive documents for segregable material.

### A.      Adequacy of the Defendants' Searches

The adequacy of an agency's search is measured by a standard of reasonableness under the attendant circumstances.  Truitt v. U.S. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990). To satisfy its burden, the defendant must show that each agency component "has conducted a search reasonably calculated to uncover all relevant documents."  Elliott v. U.S. Dep't of Agric., 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).  It may base its showing on affidavits or declarations submitted in good faith, see Truitt, 897 F.2d at 542, provided that these affidavits or declarations explain in reasonable detail the scope and method of the search, see Morley, 508 F.3d at 1116 (citing Goland, 607 F.2d at 352).  "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with [the] FOIA."  North v. U.S. Dep't of Justice, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)).  There is no requirement that an agency search every record system in response to a FOIA request; rather, it may limit its search to those locations where responsive documents are likely maintained.  Porter v. CIA, 778 F. Supp. 2d 60, 69 (D.D.C. 2011).  However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is

not proper." Beltranena v. Clinton, 770 F. Supp. 2d 175, 183 (D.D.C. 2011) (quoting Truitt, 897

F.2d at 542); see also Valencia–Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999)

(stating that summary judgment is inappropriate "if a review of the record raises substantial

doubt" about the adequacy of the search (citation omitted)).

In response to the plaintiff's FOIA request, the defendants searched two sources of

records where relevant documents were likely to exist:

> (1) an [Office of Enforcement Operations ("OEO")] database used to track federal
> prosecutors' requests for permission to apply for court-authorization to
> surreptitiously intercept conversations of person[s] allegedly involved in criminal
> activity under Title III ("the Title III request tracking system"); and (2) archived
> emails of Criminal Division employees that are maintained by its IT department.

Sprung Decl. ¶ 11.

The records in the OEO database are assembled as part of the procedure for obtaining

court authorization for a wiretap pursuant to Title III of the Omnibus Crime Control Safe Streets

Act ("Title III"), 5 U.S.C. § 2510–21.  See id. ¶ 13.  Internal DOJ procedures require a federal

prosecutor to "submit [a Title III] request to OEO's Electronic Surveillance Unit ("ESU"), which

reviews the request to ensure that it complies with Title III."  Id.  "When [the] ESU receives a

prosecutor's request, an administrative staff member logs it into the Title III request tracking

system," id. ¶ 14, along with the "date of request; type of interception requested (e.g., cellular

phone, landline, or email); where a phone is involved, the phone number; requesting AUSA;

[the] investigative agency that will handle the interceptions; and the date the request was

approved or rejected," id. ¶ 16.  Users may also "upload documents such as prosecutors'

applications, agents' affidavits, proposed court orders, and action memorandums."  Id.  The

information in this database dates "from 1983 to the present," id., and the OEO database is the

"only official information management system for Title III applications submitted to [the] OEO

by federal prosecutors across the U.S.," id. ¶ 12.  The defendants searched this "system for references to the four telephone numbers that [the plaintiff] identified in his . . . FOIA request, and the name 'Lamont Wright.'"  Id.

In addition to searching the Title III request tracking system, the defendants conducted a search of archived emails between the federal prosecutor involved in the plaintiff's underlying criminal matter and the ESU attorney who reviewed the prosecutor's Title III request.  Id. ¶ 19. According to the defendants,

> [e]mail messages (as well as any attachments) sent or received by Criminal Division employees are archived in 'Enterprise Vault,' a file and email archiving program . . . .  All emails more than [thirty] days old are automatically archived in Enterprise Vault.  The Criminal Division's Enterprise Vault contains emails dating back to 2009.

Id. ¶ 17.  The DOJ's Information Technology Management staff ("ITM") administers this system and is tasked with "searching the Division's email archives in response to data requests like [the plaintiff]'s."  Id. ¶ 18.  The ITM searched "all emails exchanged between the ESU attorneys and the prosecutor during the period [of] December 26, 2011 to May 30, 2012[,] . . . the entire time period of communications . . . concerning the Title III authorizations that are at issue to this case."  Id. ¶ 19.  According to the defendants, "these individuals would have had no reason to be communicating with each other about the authorizations outside that period."  Id.

Based on the searches described above, the Court finds that the defendants' declaration sets forth sufficient factual detail of the methods utilized in conducting searches for responsive documents to conclude that the defendants "conducted . . . search[es] reasonably calculated to uncover all relevant documents."  Elliott, 596 F.3d at 851 (internal quotation marks omitted).  As another member of this Court has explained:

> The OEO database contains both the requests for permission to obtain a wiretap and the approval letters signed by the Criminal Division officials. It follows that

because [the plaintiff] requested records relating to DOJ's approval of electronic surveillance of certain telephone numbers, any responsive records would almost certainly be located in the database specifically designated for this purpose.

Ellis v. DOJ, __ F. Supp. 3d __, __, 2015 WL 3855587, at *3 (D.D.C. 2015).  Therefore, the

Court finds that the defendants' searches were reasonable under the attendant circumstances.  See

id. at *3–4 (finding adequate the DOJ's searches of the OEO database and of the archived email

communications between the prosecutor and ESU attorney where the plaintiff sought Title III

wiretap information pursuant to the FOIA); see also White v. DOJ, 840 F. Supp. 2d 83, 89

(D.D.C. 2012) (finding declarations sufficient where they "explain[ed] what system was

searched, the terms used, why it was likely to contain responsive documents, and that no other

search method would reveal responsive documents").

     The defendants having "made a prima facie showing of adequacy, the burden [then] shifts

to the plaintiff to provide . . . evidence sufficient to raise 'substantial doubt' concerning the

adequacy of the agency's search."  Shoenman v. FBI, 764 F. Supp. 2d 40, 46 (D.D.C. 2011)

(quoting Iturralde v. Comptroller of Currency, 315 F.3d 311, 314 (D.C. Cir. 2003)).  The

plaintiff presents two challenges to the defendants' searches, both which are unpersuasive.  First,

he objects to the defendants' failure to "conduct a search in the [United States Drug Enforcement

Agency's] Narcotics and Dangerous Drug Information System ('NADDIS'), [or] the [Executive

Office of the United States Attorneys'] Le[]gal Information Office Network Systems

('LIONS')," despite being "aware of the fact that the plaintiff's Title III investigation was

initiated by the DEA and the [United States Attorney for the Western District of Pennsylvania]."

Pl.'s Opp'n at 23.  But "there is no requirement that an agency search every record system in

response to a FOIA request, . . . only those [systems of] records that are likely to have responsive

documents."  Porter, 778 F. Supp. 2d at 69 (citing Oglesby v. U.S. Dep't of the Army, 920 F.2d

57, 68 (D.C. Cir. 1990)).  "The agency is not required to speculate about potential leads," nor

"look beyond the four corners of the request for leads to the location of responsive documents."

Kowalczyk v. Dep't of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996).  However, "it will be the rare

case indeed in which an agency record contains a lead so apparent that the [agency] cannot in

good faith fail to pursue it."  Id.  Here, the plaintiff has neither offered a basis to conclude that

responsive records existed in NADDIS or LIONS but not the systems that were searched, nor has

he suggested that the defendants had "leads that raise[d] red flags" indicating that they should

search elsewhere.  Wiesner v. FBI, 668 F. Supp. 2d 164, 170 (D.D.C. 2009) (interpreting

Kowalczyk, 73 F.3d at 389).  Instead, the defendants have sufficiently represented that "DOJ

identified the systems of records reasonably likely to contain responsive records—the Criminal

Division's Title III request tracking system and archived emails contained in Enterprise Vault—

and each of these systems was searched to locate responsive records."  Defs.' Reply at 11.  And

"[a]t summary judgment, a court may rely on [a] reasonably detailed affidavit . . . averring that

all files likely to contain responsive materials (if such records exist) were searched."  Ancient

Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011) (quotations and

citation omitted).

Second, the plaintiff claims the search was insufficient because "neither of these two

alleged system[s] of DOJ records are regularly used by the Criminal Division for processing of

FOIA/PA[]" requests.  Pl.'s Opp'n at 5–6.  The plaintiff provides no evidence to support this

assertion or explain why it would be inappropriate for the defendants to rely upon the identified

systems in conducting its searches in light of the subject matter of the plaintiff's FOIA request.

And "it is well settled that conclusory allegations unsupported by factual data will not create a

triable issue of fact."  Broaddrick v. Exec. Office of President, 139 F. Supp. 2d 55, 65 (D.D.C.

2001) (internal quotation marks and citation omitted).  Therefore, the Court must conclude that the defendants have submitted affidavits sufficient to establish the adequacy of the search, and the plaintiff has failed to establish substantial doubt as to the sufficiency of the search.

### B.      The FOIA Exemptions Asserted by the Defendants

### 1.  Exemption (b)(3)

Pursuant to Exemption (b)(3), an agency may withhold information "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), so long as the statute:

> (A)(i) requires [withholding] from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and

> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

Id.  To prevail on summary judgment, the agency "need only show that the statute claimed is one of exemption as contemplated by Exemption [(b)(3)] and that the withheld material falls within the statute."  Larson v. Dep't of State, 565 F.3d 857, 865 (D.C. Cir. 2009) (citation omitted).

The defendants invoked Exemption (b)(3) in conjunction with Title III, 18 U.S.C. §§ 2510–2521, as grounds for withholding "[m]emorandums from the [Assistant Attorney General ("AAG")] to [the] OEO advising that the prosecutor's request ha[d] been approved and an attached copy of the [Attorney General]'s delegation of authority to the AAG."  Sprung Decl. ¶ 24.[5]  According to Title III, "[a]pplications made and orders granted under this chapter shall be sealed by the judge . . . .  Such applications and orders shall be disclosed only upon a showing of

---

[5] Also withheld under Exemption (b)(3) were "[p]rosecutors' requests for permission to apply for court-authorization to intercept wire communications, including applications, affidavits or law enforcement agents, and proposed court orders" and "[a]ction memorandums from [the] OEO to the AAG recommending approval of prosecutors' requests."  Sprung Decl. ¶ 24.  Because the Court concludes, infra, that these documents are properly withheld pursuant to Exemption (b)(5), it need not also consider Exemption (b)(3)'s applicability.  See Larson, 565 F.3d at 862–63 ("[A]gencies may invoke the exemption independently and courts may uphold agency action under one exemption without considering the applicability of the other." (citation omitted)).

good cause before a judge of competent jurisdiction."  18 U.S.C. § 2518(8)(b).  The plaintiff

correctly notes in his opposition that Authorization Memoranda are not specifically articulated in

the statute as protected from disclosure.  Pl.'s Opp'n at 24.  But as explained by another member

of this Court, and reiterated by the defendants, while "section 2518(8)(b) does not mention

[A]uthorization [M]emoranda, the memoranda are a required part of the application submitted to

the court," and as they "contain the very information § 2518(8)(b) seeks to protect, the

production of that information . . . would result in the disclosure of exempted information and

would thereby negate the intent of the statute."  Dorsey v. DEA, __ F. Supp. 3d __, __, 2015 WL

1431707, at *3 (D.D.C. 2015) (internal quotation marks and citations omitted); see also Sprung

Decl. ¶ 27.  Because "[d]isclosure of the Authorization Memoranda necessarily discloses

information that must be protected under Title III," they are "properly . . . withheld under

Exemption 3."  Dorsey, __ F. Supp. 3d at __, 2015 WL 1431707, at *4 (citations omitted); see

also Butler v. U.S. Dep't of Justice, No. 86-2255, 1994 WL 55621, at *9 (D.D.C. Feb. 3, 1994)

(finding affidavits submitted in support of wiretap applications exempt from disclosure under

Exemption (b)(3)); Sinito v. U.S. Dep't of Justice, No. 87-0814 TFH, 2000 U.S. Dist. Lexis

22504, at *21 (D.D.C. July 12, 2000) (finding affidavits that were incorporated into sealed Title

III applications were exempt from disclosure), aff'd, 22 F. App'x 1 (D.C. Cir. 2001).

Here, the defendants assert "that the sealing order [in the plaintiff's criminal case] entered

by the Court . . . prohibits disclosure of the [requested] documents to the general public" and thus

the defendants "have no discretion to disclose them" pursuant to 18 U.S.C. § 2518(8)(b).  Sprung

Decl. ¶ 27.  Indeed, a defendant "has no discretion, in [the] plaintiff's case or in any other, to

disclose Title III information" once a Title III application and order is sealed by a judge.  Sinito,

2000 U.S. Dist. Lexis 22504, at *20.

The plaintiff challenges prior interpretations of 18 U.S.C. § 2518(8)(b) by members of this Court as a statute that contemplates exemption under the FOIA.  He asserts that

> C[]ongress's intent for sec[re]cy in enacting the Title III statu[t]e was to protect the intercepted content obtained from the aggrieved party's private [conversation], not to prevent the aggrieved party, the plaintiff in this instant matter, 'from examining and testing' the authorization, and approval under which such Title III intercept content was obtained.

Pl.'s Opp'n at 14–15.  But this is a patent misinterpretation of Title III, and ignores clear manifestations of Congress's intent to afford disclosure protections to both the contents of intercepts and documents submitted as part of the application process.  The plain language of the statute requires Courts to seal Title III applications and orders through the mandatory verb "shall," and permits disclosure "only upon a showing of good cause before a judge of competent jurisdiction."  18 U.S.C. § 2518(8)(b).  The legislative history of Section 2518(8)(b) further illustrates Congress's intent:

> Subparagraph (b) provides that applications and orders for authorization shall be treated confidentially.  Particularly in renewal situations, they may be expected to contain sensitive information.  The provision requires them to be sealed and kept wherever the judge directs . . . .  Applications and orders may not be disclosed except incidental to the disclosure or use of the records themselves after a showing of good cause.

S. Rep. No. 90-1097, at 2194 (1968).  For all of these reasons, the Court finds the plaintiff's argument unpersuasive.[6]

In the alternative, the plaintiff challenges the defendants' declaration and <u>Vaughn</u> Index, arguing that they do "not provide a detailed explanation of any of the documents the Criminal

---

[6] The plaintiff also claims the rule of lenity should apply and the statute should therefore be interpreted in his favor. Pl.'s Opp'n at 28.  However, the FOIA is a civil statute and "the rule [of lenity] does not generally apply to a civil statute." <u>U.S. v. Turner</u>, 689 F.3d 1117, 1125 (9th Cir. 2012).  Moreover, "the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." <u>Barber v. Thomas</u>, 560 U.S. 474, 488 (2010) (internal quotation marks and citation omitted).  Here, neither the FOIA, even if it were not a civil statute, nor Title III are sufficiently ambiguous to trigger the application of this rule.

Division is claiming to be in it's [sic] system of records." Pl.'s Opp'n at 6. Even though the defendants do not offer detailed descriptions of the documents withheld pursuant to Exemption (b)(3), they have nonetheless fulfilled their burden under the FOIA. "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." ACLU v. CIA, 892 F. Supp. 2d 234, 242 (D.D.C. 2012) (citing Goland, 607 F.2d at 350) (internal quotation marks omitted). The defendants identified Title III as a relevant statute, and properly described documents that are covered by the statute, such as the Authorization Memoranda. See Sprung Decl. ¶¶ 24–25. Thus, the Court concludes that the defendants have fulfilled their burden to "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad faith." Military Audit Project, 656 F.2d at 738.

Lastly, the plaintiff asserts that the defendants cannot withhold the subject records because they are part of the public domain. Pl.'s Opp'n at 16. "[A] plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." Afshar v. Dep't of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983). The plaintiff's support for his claim is a court transcript which shows that the "intercepted and obtained conversations, were disclosed, played, and entered into evidence at the February 20, 2013 de novo detention hearing for the plaintiff's alleged co-defendant." Pl.'s Opp'n at 16. Additionally, the plaintiff notes that his attorney in his criminal

case received "discovery material that among other records included the Title [III] application, affidavits orders, and the alleged DOJ AAG [A]uthorization [M]emoranda." Id. at 19.

The Court disagrees for several reasons that the subject documents have entered the public domain.  First, the court transcripts do not establish that the Title III applications and authorization memoranda have been released to the public.  The government has presented proof that "[t]he transcript simply indicates that the Government played several recordings of intercepted conversations at the hearing.  The transcript does not establish that any applications, affidavits[,] or orders were introduced into evidence."  Sprung Decl. ¶ 29.  Thus, the transcripts do not contain "information identical" to that in the withheld records and therefore are not considered part of the public domain.  Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1280 (D.C. Cir. 1992) ("The government . . . is willing to give [the plaintiff] only exactly what he can find in hard copy . . . .  We think this position, grudging though it may be, is supported . . . by our public domain cases, which . . . require the requester to point to 'specific' information identical to that being withheld" (citations omitted)).  Second, the materials provided to the plaintiff and his legal counsel through discovery are not in the public domain.  "[W]ith respect to reliance on the public domain exception to an otherwise applicable FOIA exemption, 'constitutionally compelled disclosure to a single party simply does not enter the public domain.'"  Neuman v. U.S, __ F. Supp. 3d at __, __, 2014 WL 4922584, at *7 (D.D.C. 2014) (quoting Cottone v. Reno, 193 F.3d 550, 556 (D.C. Cir. 1999) (finding materials given to plaintiff as part of discovery in his criminal trial were not in the public domain)).  The plaintiff has not identified an instance of disclosure of the subject records outside the discovery process and thus has failed to show that the withheld

records exist in the public domain.  Accordingly, the Court concludes that the defendants properly withheld the subject records pursuant to Exemption (b)(3).[7]

### 2. Exemption (b)(5)

Exemption (b)(5) protects from disclosure "inter-agency on intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  To prevail against disclosure under Exemption (b)(5), the document's "source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).  "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters."  Burka v. Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996).  Accordingly, courts have incorporated the three traditional civil discovery privileges under Exemption (b)(5): (1) the attorney work-product privilege; (2) the deliberative process privilege; and (3) the attorney-client privilege.  Id.; see also Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862 (D.C. Cir. 1980).

---

[7] In his opposition, the plaintiff argues that if Exemption (b)(3) applies to the subject documents, he has nonetheless demonstrated good cause for disclosure as required by 18 U.S.C. § 2518(8)(b).  Pl.'s Opp'n at 26.  While the Court notes that any such attempt to disturb the sealing order should generally be adjudicated by the judge responsible for overseeing that criminal matter, the Court need not reach the merits of the good cause argument.  Asserting good cause to compel disclosure under Title III is a novel claim for relief separate and apart from this FOIA action, and it is inappropriate for a Court to consider new claims raised for the first time in a brief in opposition to a motion for summary judgment.  See, e.g., Arbitraje Casa de Cambio, 297 F. Supp. 2d at 170 ("it is axiomatic that a complaint may not be amended by the briefs in opposition" (quoting Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989))); Budik, 36 F. Supp. 3d at 144 ("It is a well-established principle of law in this Circuit that a plaintiff may not amend her complaint by making new allegations in her opposition brief.").

The attorney work-product privilege "shields materials prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." McKinley v. Bd. of Governors of the Fed. Reserve Sys., 647 F.3d 331, 341 (D.C. Cir. 2011) (internal quotations and citation omitted).  This privilege protects "mental impressions, conclusions, opinions, or legal theories of a party's attorney," Fed. R. Civ. P. 26(b)(3)(B), and "factual materials prepared in anticipation of litigation," Heggestad v. U.S. Dep't of Justice, 182 F. Supp. 2d 1, 8 (D.D.C. 2000), which are "reflected . . . in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways," Hickman v. Taylor, 329 U.S. 495, 511 (1947).  The attorney work-product privilege analysis requires the Court to consider "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." In re Sealed Case, 146 F.3d 881, 884 (D.C. Cir. 1998) (internal quotation and citation omitted).

The defendants asserted the attorney work-product privilege to withhold "all of the documents Mr. Wright is seeking in this suit."[8]  Sprung Decl. ¶ 30.  Specifically, this includes:

> a) Prosecutors' requests for permission to apply for court-authorization to intercept wire communications, including applications, affidavits of law enforcement agents, and proposed court orders;
>
> b) OEO Title III System Logging Notes indicating that OEO has received a request from a prosecutor for permission to apply for a Title III order with respect to specified telephone numbers. They include the name of the subject of the investigation, the name and address of the subscriber of the telephone service, the

---

[8] The defendants also assert that they withheld some of these records pursuant to Exemptions (b)(3), (b)(7)(c), and (b)(6).  The Court, in concluding that the defendants properly withheld records responsive to the plaintiff's request pursuant to Exemption (b)(5), need not also consider the applicability of these other Exemptions.  See Larson, 565 F.3d at 862–63 ("[A]gencies may invoke the exemptions independently and courts may uphold agency action under one exemption without considering the applicability of the other." (citation omitted)).

name of the ESU attorney who has been assigned to review the request, and the user name of the ESU employee who created the Logging Note[;]

c) Email messages from ESU to AUSA's acknowledging receipt of the AUSA's Title III application.  These messages identify the names of the Target Subject, the AUSA, and the ESU attorney;

d) Email messages between the prosecutor making the request and the ESU attorney assigned to review it, in which the attorneys discuss the ESU review process, edits, revisions, etc.[;]

e) Action memorandums from OEO to the AAG recommending approval of prosecutors' requests;

f) Memorandums from the AAG to OEO advising that the prosecutor's request has been approved and an attached copy of the AG's delegation of authority to the AAG; and

g) Letters signed by Deputy AAGs on behalf of the AAG to a U.S. Attorney advising that the prosecutor's request to apply for a Title III order had been approved. The letters identify the name and address of the telephone subscriber and the names of the Target Subjects.

Sprung Decl. ¶ 30.  The defendants represent that each of these documents was "prepared by an attorney who was acting at the behest of a client (the U.S. Government) or someone acting at the direction of such an attorney" in anticipation of litigation, "i.e., a criminal prosecution of the individuals allegedly involved in the criminal activity that was evidenced by the court-ordered interceptions."  Sprung Decl. ¶ 32.  The defendants state that withheld documents were "used to establish the existence of probable cause, that less intrusive investigative methods have been exhausted or would be futile, and other important statutory requirements that must be met to ensure that the resulting intercepts may be admissible."  Id.  Documents such as emails and logging notes contain information on the receipt and processing of requests and applications.  Id. ¶ 30.  Factual information gathered in anticipation of litigation is also contained in documents, including the agent affidavits and action memoranda "summarize and analyze the relevant facts." Id. ¶ 35.  Courts in this district have routinely found similar records to be properly withheld

under the attorney work-product privilege of Exemption (b)(5).  See, e.g., Dorsey v. DEA, __ F.
Supp. 3d __, __, 2015 WL 1431707, at *5 (D.D.C. 2015) ("the contents [of the Title III
Authorization Memoranda] were attorney work product which squarely fit within the parameters
of Exemption 5"); White v. U.S. Dep't of Justice, 952 F. Supp. 2d 213, 219 (D.D.C. 2013)
(finding that the EOUSA properly withheld forms and cover sheets as work product because the
documents are used to "track and describe the status of investigations" (citation omitted)); Gov't
Accountability Project v. U.S. Dep't of Justice, 852 F. Supp. 2d 14, 26 (D.D.C. 2012) (finding
that attorney work-product privilege shielded from discovery emails between DOJ attorneys
discussing whether to pursue prosecution); Wolfson v. United States, 672 F. Supp. 2d 20, 30
(D.D.C. 2009) (finding work-product privilege protected Criminal Division memoranda
recommending authorization for intercepts).

The plaintiff does not contest the defendants' characterization of the withheld documents
as work product that are exempt from disclosure pursuant to Exemption (b)(5).  Instead, he
asserts that the subject materials are improperly withheld because they are not predecisional.
Pl.'s Opp'n at 29.  However, whether documents constitute attorney work-product does not turn
on whether they are pre- or post-decisional; instead, the predecisional nature of a document is a
factor to consider when Exemption (b)(5) is asserted for documents withheld as part of the
deliberative process privilege.  See, e.g., Coastal States Gas Corp., 617 F.2d at 866–70.  And
because the Court is not considering whether the records may be withheld pursuant to
deliberative process privilege of Exemption (b)(5), this argument is misplaced.

The plaintiff also contends that if the records are protected by Exemption (b)(5), "the
defendants['] privilege of exemption from disclosure FOIA [E]xemption 5 should be denied on
the grounds that the DOJ . . . [is] involved in alleged government misconduct."  Pl.'s Opp'n at

33.  The Circuit has recognized that, "at least in some circumstances, a lawyer's unprofessional behavior may vitiate the work product privilege."  Moody v. IRS, 654 F.2d 795, 800 (D.C. Cir. 1981).  But to invoke government misconduct as grounds to negate the attorney work-product privilege,

> the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

Nat'l Archives and Records Admin. v. Favish, 541 U.S. 157, 174 (2004); see also SafeCard Servs, 926 F.2d at 1205–07 ("unless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity . . . there is no reason to believe that the incremental public interest in such information would ever be significant.").  The plaintiff has failed to produce such evidence, offering only conclusory allegations that the defendants are engaged in "racial[ly] based discriminatory electronic surveillance investigations of African-American citizens in the [Western District of Pennsylvania]," Pl.'s Opp'n at 40, and "illegal[ly] unauthorized wiretapping of the plaintiff and/or his alleged [Western District of Pennsylvania] co-defendants," id. at 33.[9]  While the plaintiff has attached to his opposition a number of newspaper articles regarding the general use of electronic surveillance, he does not offer any particularized information regarding alleged misconduct concerning the criminal investigation directed at him, or anyone else.  Lacking any evidence of misconduct on the part of the government, the plaintiff's argument must be rejected.  See, e.g., Nat'l Archives and Records

---

[9] The Court reviewed the exhibits the plaintiff attached in support of this claim and concludes that none of them present relevant or reputable information on the subject.  An increase in the number of wiretaps per year does not necessarily indicate government misconduct, as the plaintiff claims.  See Pl.'s Opp'n at 43.  Additionally, although the plaintiff contends that a disproportionate percentage of African Americans are targets of wiretaps, he has not provided the source of these purported statistics.  Thus, representing that "97% of the targets and subjects" of wiretaps are African Americans without providing a source for this information proves nothing.  See id. at 44. Lastly, no evidence is offered to substantiate the plaintiff's claim that the government has employed unauthorized wiretaps.

Admin., 541 U.S. at 174.  Accordingly, the Court concludes that the defendants properly asserted Exemption (b)(5) to withhold the subject documents, as they are protected from disclosure under the attorney work-product privilege.

### C.    Segregability

Under the FOIA, "even if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)."  Roth, 642 F.3d at 1167 (internal quotation marks and citation omitted).  Therefore, "it has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  Wilderness Soc'y v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 18 (D.D.C. 2004), (quoting Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977)).  Thus, an agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released."  Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks and citation omitted).  However, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The defendants represent that they have reviewed the responsive documents and deemed all exempt and not segregable.  Sprung Decl. ¶ 41 ("I have reviewed each page of the material deemed responsive to Mr. Wright's request to determine whether there was any non-exempt information that could be reasonably segregated and released.  I have determined that there is no segreg[a]ble non-exempt information.").  With respect to the majority of the documents, the defendants assert that segregability is not possible because they are exempt pursuant to the

attorney work-product privilege of Exemption (b)(5).  Defs.' Mem. At 29.  When assessing

segregability, "[t]he work-product privilege simply does not distinguish between factual and

deliberative material."  <u>Martin v. Office of Special Counsel</u>, 819 F.2d 1181, 1187 (D.C. Cir.

1987).  "In other words, factual material is itself privileged when it appears within documents

that are attorney work product.  If a document is fully protected as work product, then

segregability is not required."  <u>Judicial Watch, Inc. v. Dep't of Justice</u>, 432 F.3d 366, 371 (D.C.

Cir. 2005).

 With respect to the Authorization Memoranda withheld pursuant to Exemption (b)(3), the

defendants' representation in its affidavit is sufficient.  An affidavit attesting to the performance

of a review of the documents and a <u>Vaughn</u> index describing each document satisfies the FOIA's

segregability requirement.  <u>See, e.g.</u>, <u>Johnson v. Executive Office for U.S. Attorneys</u>, 310 F.3d

771, 776 (D.C. Cir. 2002) (finding "[t]he combination of the <u>Vaughn</u> index and the affidavits . . .

are sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a

document cannot be further segregated" where the index described each document and the

defendant's affiant stated in her affidavit that "she personally conducted a line-by-line review of

each document withheld in full and determined that 'no documents contained releasable

information which could be reasonably segregated'"); <u>Loving v. Dep't of Defense</u>, 550 F.3d 32,

41 (D.C. Cir. 2008) ("the district court relied on the very factors that we have previously deemed

sufficient for this [segregability] determination, i.e., the description of the document set forth in

the <u>Vaughn</u> index and the agency's declaration that it released all segregable material . . .  The

district court thus acted well within its discretion when . . . it ruled that that the government had

demonstrated that [the document] contained no segregable portions."); <u>Elec. Privacy Info. Ctr. v.</u>

<u>Dep't of Justice Criminal Division</u>, __ F. Supp. 3d __, __, 2015 WL 971756, at *10 (D.D.C.

2015) (finding the defendant "amply supported its determination that there is no segregable material" by providing declarations attesting to the review of the documents and a <u>Vaughn</u> index identifying each document and the basis for withholding it).  Here, the defendants provided a <u>Vaughn</u> index describing the withheld documents and an affidavit asserting that the documents "have [been] reviewed . . . [and] there was [no] non-exempt information that could be reasonably segregated and released."  Sprung Decl. ¶ 41.  And the plaintiff has not provided any reason to question the good-faith presumption afforded to these representations.  Thus, the Court concludes that the defendants have satisfied their segregability obligations under the FOIA.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the defendants have provided sufficient factual detail that supports their position that they conducted reasonable and adequate searches of their records for documents responsive to the plaintiff's FOIA requests and properly withheld all documents pursuant to an applicable disclosure Exemption.  Accordingly, the Court must grant the defendants' motion for summary judgment.

**SO ORDERED** this 17th day of August, 2015.[10]

REGGIE B. WALTON
United States District Judge

---

[10] An Order consistent with this Memorandum Opinion will be issued contemporaneously.